# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

PANGEA EQUITY PARTNERS, LP,   )
PANGEA EQUITY PARTNERS II,   )
LP, PANGEA VENTURES, LLC,   )   C.A. No. N23C-12-060 MAA CCLD
PANGEA REAL ESTATE   )
HOLDINGS, LLC, and PANGEA   )
PROPERTIES,   )
  )
  Plaintiffs,   )
  )
  v.   )
  )
GREAT AMERICAN INSURANCE   )
GROUP and ALLIANZ GLOBAL   )
RISKS US INSURANCE   )
COMPANY,   )
  )
  Defendants.   )

Submitted: December 19, 2024
Decided: March 12, 2025

*Plaintiffs' Motion for Judgment on the Pleadings:*
**GRANTED.**

*Insurers' Motion for Judgment on the Pleadings:*
**DENIED.**

## <u>MEMORANDUM OPINION</u>

William J. Burton, Esquire, and Gabriella Mouriz, Esquire of BARNES & THORNBURG LLP, Wilmington, Delaware, and Lilit Asadourian, Esquire (Argued) and Alice Kyureghian, Esquire of BARNES & THORNBURG LLP, Los Angeles, California, *Attorneys for Plaintiffs*.

Alan R. Silverstein, Esquire and Sara A. Barry, Esquire, of CONNOLLY GALLAGHER LLP, Wilmington, Delaware, and Erik J. Tomberg, Esquire (Argued) of WILSON ELSER, Raleigh, North Carolina, *Attorneys for Defendant Great American Insurance Company*.

Bruce W. McCullough, Esquire of BODELL BOVE LLC, Wilmington, Delaware and David F. Cutter, Esquire (Argued) and Emily R. Tripicchio, Esquire of BATESCAREY LLP, Chicago, Illinois, *Attorneys for Defendant Allianz Global Risks US Insurance Company*.

**Adams, J.**

## INTRODUCTION[1]

This opinion concerns the breadth of application for broadly worded liability insurance policy exclusion clauses. The Pangea Plaintiffs[2] filed this action against their directors & officers ("D&O") liability insurers, Great American Insurance Company ("Great American") and Allianz Global Risks US Insurance Company ("Allianz," and, together with Great American, the "Insurers").[3] The Pangea Plaintiffs face liability in a *qui tam* action filed by Relator Antoni Muhawi.[4] (The "*Qui Tam* Complaint" or "*Qui Tam* Action"). The Pangea Plaintiffs contend the *Qui Tam* Action invokes the duty to defend under D&O policies issued by the Insurers.[5] The Insurers disagree.[6] The Pangea Plaintiffs and Insurers filed cross-motions for judgment on the pleadings, asking the Court to determine whether a particular breach of contract policy exclusion clause (the "Breach of Contract Exclusion") precludes coverage for liability incurred from the *Qui Tam* Action.[7]

---

[1] Citations to the Second Amended Complaint are in the form of "Sec. Am. Compl." (D.I. 34). Citations to the Exhibits to the Second Amended Complaint are in the form of "Sec. Am. Compl. Ex." (D.I. 37).

[2] The Court refers to the Plaintiff entities as the "Pangea Plaintiffs." The Pangea Plaintiffs consist of Pangea Properties (a Maryland Real Estate Investment Trust), Pangea Equity Partners, L.P. (a Delaware Limited Partnership), Pangea Equity Partners II, L.P., (a Delaware Limited Partnership), Pangea Ventures LLC, (a Delaware LLC d/b/a Pangea Real Estate), and Pangea Real Estate Holdings, LLC (a Delaware LLC). Sec. Am. Compl. ¶¶ 3-7.

[3] Sec. Am. Compl. ¶¶ 8-9.

[4] Sec. Am. Compl. ¶ 10; *Id*. Ex. A.

[5] Sec. Am. Compl. ¶¶ 1-2.

[6] D.I. 40 at 11; D.I. 44 at 16.

[7] D.I. 47; D.I. 49.

For the reasons explained below, the Insurers' Motion for a Judgment on the Pleadings is **DENIED**, and the Pangea Plaintiffs' Motion for a Judgment on the Pleadings is **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

### I. The Policies

Great American issued a primary D&O liability insurance policy for the policy period of May 9, 2021, through May 9, 2022.[8] (The "Great American Policy"). Allianz issued an excess D&O liability insurance policy for the same policy period.[9] (The "Allianz Policy" and, together with the Great American Policy, the "Policies" or the "Insurance Policies").

The Great American Policy contains a duty to defend clause: "The Insurer has the right and the duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent."[10] Great American agreed to pay for "Loss" which the Pangea Plaintiffs become legally obligated to pay by reason of a "Claim" for any "Wrongful Acts" taking place during the Policy Period.[11] The Policies define each of those quoted terms:

---

[8] Sec. Am. Compl. Ex. B.
[9] Sec. Am. Compl. Ex. C. The Allianz policy adopts the definitions for terms used in the Great American Policy. *See id.* § 3.1 ("Any term used in this Policy, including Application, Claim, Loss and Insured(s) that is defined in the [Great American Policy] shall have the same meaning as assigned to such term in the [Great American Policy]").
[10] Sec. Am. Compl. Ex. B at End. No. 18.
[11] Sec. Am. Compl. ¶ 20; *Id*. Ex. B § I(A).

- **Loss**: "judgments, damages, including punitive or exemplary damages, the multiple portion of any multiplied damage award…, settlements, and Costs of Defense."[12]  Loss also includes pre-judgment and post-judgment interest provided that neither the pre-judgment nor post-judgment interest reduce the limit of liability.[13]

- **Costs of Defense**: "reasonable and necessary legal fees costs and expenses incurred in the investigation, defense or appeal of any Claim."[14]

- **Claim**: "a civil, criminal administrative or arbitration proceeding made against any Insured seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading…"[15]

- **Wrongful Act**: "any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the Insured Entity."[16]

An exclusion clause in the Great American Policy limits the duty to defend. The Insurers are not liable to make any payment for Loss, "based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any

---

[12] Sec. Am. Compl. ¶ 22; *Id*. Ex. B § III(L).
[13] Sec. Am. Compl. ¶ 22; *Id*. Ex. B § III(L).
[14] Sec. Am. Compl. ¶ 23; *Id*. Ex. B § III(D).
[15] Sec. Am. Compl. ¶ 24; *Id*. Ex. B at End. No. 8.
[16] Sec. Am. Compl. ¶ 25; *Id*. Ex. B § III(R).

way involving any actual or alleged breach by [the Pangea Plaintiffs] of an express or implied contract or agreement" (the "Breach of Contract Exclusion").[17] This Breach of Contract Exclusion applies to the Great American Policy's Side C coverage.[18]

## II.     The *Qui Tam* Action.

On March 20, 2018, Relator Antoni Muhawi filed a *qui tam* complaint under seal captioned *United States of America ex. rel. Antoni Muhawi v. Pangea Properties, et al.* (Case No. 18-cv-02022) in the United States District Court for the Northern District of Illinois (the "*Qui Tam* Complaint").[19] The *Qui Tam* Complaint alleges the Pangea Plaintiffs participated as landlords in the United States Department of Housing and Urban Development's ("HUD") Section 8 Housing Choice Voucher Program ("HCVP").[20] The Relator alleged the Pangea Plaintiffs were required to certify in a Request for Tenancy Approval ("RFTA") form that the rents they charged to tenants on housing assistance programs were not higher than the rents charged for comparable unassisted units.[21] The *Qui Tam* Complaint alleges the Pangea Plaintiffs violated the False Claims Act[22] ("FCA") by submitting false

---

[17] Sec. Am. Compl. Ex. B at End. 12.
[18] Sec. Am. Compl. Ex. B at End. 12.
[19] Sec. Am. Compl. ¶ 10; *See id*. Ex. A (the Third Amended *Qui Tam* Complaint).
[20] Sec. Am. Compl. Ex. A ¶ 3.
[21] Sec. Am. Compl. Ex. A ¶¶ 5, 11-12, 40.
[22] 31 U.S.C. § 3729, *et seq*.

certifications and information regarding the rent comparability for Section 8 housing.[23]

On May 18, 2021, the Second Amended Complaint for the *Qui Tam* Action was served on the Pangea Plaintiffs.[24] The Pangea Plaintiffs notified the Insurers of their receipt of the *Qui Tam* Complaint.[25] The Insurers denied Plaintiffs' claim for coverage in connection with the *Qui Tam* Complaint.[26] The Insurers allege that the Breach of Contract Exclusion bars coverage for the *Qui Tam* Action.[27]

### III. Procedural History

The Pangea Plaintiffs initiated this action, alleging that the Insurers' refusal to defend the Pangea Plaintiffs in the *Qui Tam* Action constitutes a breach of the Insurance Policies.[28] The Pangea Plaintiffs' Second Amended Complaint alleges breach of contract[29] and bad faith[30] actions against Great American. The Pangea Plaintiffs also seek a declaratory judgment that the *Qui Tam* Action is covered under the Insurance Policies.[31] Each of the Insurers filed answers to the Second Amended

---

[23] Sec. Am. Compl. ¶ 10; *Id*. Ex. A ¶¶1-16.
[24] Sec. Am. Compl. ¶ 15.
[25] Sec. Am. Compl. ¶ 16.
[26] Sec. Am. Compl. ¶¶ 32, 38; D.I. 40 at 11; D.I. 44 at 16.
[27] Defs. Great American and Allianz's Open. Br. in Supp. of Their Mot. for J. on the Plead. as to the Sec. Am. Compl. ("Insurers Opening") (D.I. 47) at 10.
[28] Sec. Am. Compl. ¶¶ 1-2.
[29] Sec. Am. Compl. ¶¶ 39-43.
[30] Sec. Am. Compl. ¶¶ 44-47.
[31] Sec. Am. Compl. ¶¶ 48-50.

Complaint.[32]  The parties filed cross-motions for judgment on the pleadings, asking the Court to determine whether the Breach of Contract Exclusion bars coverage, under the Insurance Policies, of the *Qui Tam* Action.[33]  This opinion resolves the cross-motions for judgment on the pleadings.

## STANDARD OF REVIEW

Any party may move for judgment on the pleadings after the pleadings are closed.[34]  "On such a motion, the Court must accept all the complaint's well-pled facts as true and construe all reasonable inferences in favor of the non-moving party."[35]  "The standard for a motion for judgment on the pleadings is 'almost identical' to the standard for a motion to dismiss."[36]  "The motion will be granted when no material issues of fact exist, and the moving party is entitled to judgment as a matter of law."[37]  In resolving a motion for judgment on the pleadings, "the court may consider, for carefully limited purposes, documents integral to or incorporated into the complaint by reference."[38]

---

[32] D.I. 40, 44.

[33] D.I. 47, 49.

[34] Del. Super. Civ. R. 12(c).

[35] *Blanco v. AMVAC Chem. Corp.*, 2012 WL 3194412, at *6 (Del. Super. Aug. 8, 2012) (citing *Doe v. Bradley,* 2011 WL 290829, at *3 (Del. Super. Jan. 21, 2011)).

[36] *Id*. (citing *Ross Holding and Mgmt. Co. v. Advance Realty Group, LLC*, 2010 WL 1838608, at *5 (Del. Ch. Apr. 28, 2010)).

[37] *Velocity Exp., Inc. v. Office Depot, Inc.*, 2009 WL 406807, at *3 (Del. Super. Feb. 4, 2009) (citing *Gonzales v. Apartment Communities Corp.*, 2006 WL 2905724 at *1 (Del. Super. Oct. 4, 2006)).

[38] *McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000) (citing *In re Santa Fe Pacific Corp. Shareholder Litig.*, 669 A.2d 59, 69–70 (Del. 1995)).

"Cross-motions for judgment on the pleadings function in a similar manner to cross-motions for summary judgment."[39] "Where the parties have filed cross-motions for summary judgment and have not presented argument to the Court that there is an issue of fact material to the disposition of either motion, the Court shall deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions."[40]

## DISCUSSION

### I. The Parties' Contentions

The Pangea Plaintiffs contend the *Qui Tam* Action triggered Great American's duty to defend[41] and that Great American breached this duty.[42] The Pangea Plaintiffs argue the Breach of Contract Exclusion is inapplicable, as the *Qui Tam* Complaint hinges on alleged regulatory violations by the Pangea Plaintiffs, not breaches of contract.[43] The Pangea Plaintiffs argue a broad application of the Breach of Contract Exclusion would render coverage under the Policies illusory.[44]

The Insurers argue that the language of the exclusion enables its application to the *Qui Tam* Action.[45] The Insurers contend broadly worded breach of contract

---

[39] *Silver Lake Off. Plaza, LLC v. Lanard & Axilbund, Inc.*, 2014 WL 595378, at *6 (Del. Super. Jan. 17, 2014).
[40] Del. Super. Civ. R. 56(h).
[41] Pl.'s Opening Br. in Supp. of Their Mot. for J. on the Plead. ("Pangea Opening") (D.I. 49) at 15.
[42] *Id*. at 34.
[43] *Id*. at 16.
[44] *Id*. at 32.
[45] Insurers Opening at 14.

9

exclusion clauses in liability insurance contracts are applicable to underlying cases which do not allege a breach of contract cause of action.[46] According to the Insurers, the Pangea Plaintiffs incurred obligations under federal regulations when they formed Housing Assistance Payment Contracts ("HAP Contracts") with the Chicago Housing Authority ("CHA").[47] Both the HAP Contracts and the federal regulations would be simultaneously breached by the misconduct alleged in the *Qui Tam* Action.[48] Thus, pursuant to the Insurers' logic, the *Qui Tam* Action arose out of breaches of contract, triggering the Breach of Contract Exclusion.[49]

## II. The Breach of Contract Exclusion is Not Applicable to the *Qui Tam* Action.

The duty to defend is broad.[50] "The duty to defend is determined by comparing the allegations contained in the underlying complaint with the terms of the policy."[51] "If there is a possibility that 'the underlying complaint, read as a whole, alleges a risk within the coverage of the policy,' then the insured owes a duty to defend."[52] The insurer bears the burden of showing "the allegations of the

---

[46] *Id*. at 18.
[47] *Id*. at 24.
[48] *Id*. at 24.
[49] *Id*. at 25.
[50] *In re AmerisourceBergen Corp. (n/k/a Cencora) Delaware Ins. Litig.*, 2024 WL 5203047, at *10 (Del. Super. Dec. 23, 2024) (citing *In re CVS Opioid Ins. Litig.*, 301 A.3d 1194, 1211 (Del. Super. 2023), *as corrected* (Sept. 14, 2023).
[51] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Rhone-Poulenc Basic Chems. Co.*, 1992 WL 22690, at *5 (Del. Super. Jan. 16, 1992), *aff'd sub nom. Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192 (Del. 1992).
[52] *CVR Ref., LP v. XL Specialty Ins. Co.*, 2021 WL 5492671, at *9 (Del. Super. Nov. 23, 2021) (quoting *Rhone-Poulenc*, 1992 WL 22690, at *5.

underlying complaint are 'solely and entirely within specific and unambiguous exclusions from coverage.'"[53]   Exclusions are "construed narrowly in favor of coverage."[54]

The Insurers focus on the Breach of Contract Exclusion's use of the phrase "arising out of,"[55] arguing the *Qui Tam* Action arises out of the HAP Contracts between Pangea and CHA.[56]   While Delaware law requires insurance policy clauses that employ the phrase "arising out of" to be construed broadly,[57] recent Delaware caselaw does not support the application of the Breach of Contract Exclusion based on a tenuous connection between the HAP Contracts and the *Qui Tam* Action.

In *Gallup, Inc. v. Greenwich Insurance Co.*, the Delaware Superior Court examined the application of various liability insurance policy exclusions when the insured faced a *qui tam* action contending the insured had violated the FCA through fraudulent billing practices.[58]   The insurers argued a professional services exclusion clause precluded coverage.[59]   The professional services exclusion clause in *Gallup*

---

[53] *Id.* (quoting *Rhone-Poulenc*, 1992 WL 22690, at *8).
[54] *Guaranteed Rate, Inc. v. ACE Am. Ins. Co.*, 2022 WL 4088596, at *7 (Del. Super. Aug. 24, 2022), *aff'd*, 305 A.3d 339 (Del. 2023) (quoting *Ferrellgas P'rs. L.P. v. Zurich Am. Ins. Co.*, 2020 WL 363677, at *13 (Del. Super. Jan. 21, 2020)).
[55] Insurers Opening at 14-15.
[56] Insurers Opening at 15-16.
[57] *Pac. Ins. Co. v. Liberty Mut. Ins. Co.*, 956 A.2d 1246, 1257 (Del. 2008) ("under Delaware law, the term 'arising out of' is broadly construed to require some meaningful linkage between the two conditions imposed in the contract.").
[58] *Gallup, Inc. v. Greenwich Ins. Co.*, 2015 WL 1201518, at *3 (Del. Super. Feb. 25, 2015).
[59] *Id.* at *6.

contains language nearly identical to that in the Great American Policy's Breach of Contract Exclusion:

> [T]he Insurer shall not pay Loss, including Defense Expenses, for Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged act, error or omission in connection with the Insured's performance or failure to perform professional services for others for a fee, or any act, error, or omission relating thereto.[60]

The insurers in *Gallup* argued the broad language of the exclusion enables its application to a case in which the insured allegedly engaged in fraudulent billing practices, even if the insured's professional services focused on political polling, not billing services.[61]   The court rejected the insurers' position, noting that policy exclusions are construed narrowly,[62] and holding that if the professional services exclusion were applied broadly, it would prevent "any conceivable coverage under any part of the [p]olicy."[63]

 More recently, in *Guaranteed Rate, Inc. v. ACE American Insurance Co.*, the Delaware Superior Court examined the application of a breach of contract exclusion under similar facts to the instant case.[64]   The insured faced a *qui tam* action alleging violations of the FCA, as the insured allegedly falsely certified that loans it

---

[60] *Id.* at *3, *11.
[61] *Id.* at *11.
[62] *Id.* at *6.
[63] *Id.* at *12.
[64] *Guaranteed Rate, Inc. v. ACE Am. Ins. Co.*, 2022 WL 4088596, at *7 (Del. Super. Aug. 24, 2022), *aff'd*, 305 A.3d 339 (Del. 2023).

underwrote were eligible for government insurance.[65] The insurance contract at issue "exclude[ed] coverage for any Claim alleging, based upon, *arising out of*, or attributable to the actual or alleged breach of any oral, written, express or implied contract or agreement."[66] The insurer argued that the insured issued "federally-insured loans pursuant to contracts or agreements with HUD and the VA, and that the underlying investigation arose from actual or alleged breaches of those agreements."[67] The insurer also noted that the allegedly breached certification requirements were "part and parcel" of the requirements imposed by the insured's contracts with the government.[68] The insurer in *Guaranteed Rate* thus invoked similar arguments to those raised by the Insurers in the instant case.

The Superior Court in *Guaranteed Rate* held that the breach of contract exclusion was inapplicable.[69] The court explained that the *qui tam* complaint against the insured led to a Civil Investigative Demand ("CID") brought by the United States Government,[70] and that the CID did not allege a breach of contract cause of action against the insured, so the breach of contract exclusion was inapplicable.[71] The court declared that a broad reading of the breach of contract exclusion – one which enabled

---

[65] *Id*. at *1, *4, *8.
[66] *Id*. at *8 (emphasis added).
[67] *Id*.
[68] *Id*.
[69] *Id*.
[70] *Guaranteed Rate*, 2022 WL 4088596, at *1, *4.
[71] *Id*. at *8.

the clause's application in the absence of a breach of contract action – would "void coverage."[72]

*Guaranteed Rate* is analogous to the instant case. Both concern *qui tam* complaints which allege violations of the FCA.[73] In both cases, the underlying claim for which insured requested coverage did not allege a breach of contract cause of action against the insured.[74] The Court agrees with the reasoning in *Guaranteed Rate* and rejects an application of the Breach of Contract Exclusion to the *Qui Tam* Action.

The Court is not persuaded by the Insurers' attempt to distinguish the instant case from *Guaranteed Rate*.[75] The Insurers first argue that the "very existence of a 'contract' [which was breached by the insured] was unclear in *Guaranteed Rate*," unlike in the case of the Pangea Plaintiffs.[76] This argument ignores the holding in *Guaranteed Rate*, which based its analysis on the assumption that the insured had formed a contract with the government, and still concluded that the breach of contract exclusion was inapplicable.[77]

---

[72] *Id.*
[73] *Id.* at *4; Sec. Am. Compl. ¶ 10; *Id.* Ex. A, ¶¶ 1-16.
[74] *Guaranteed Rate*, 2022 WL 4088596, at *8; Sec. Am. Compl. Ex. A.
[75] Insurers Opening at 28-30.
[76] Insurers Opening at 28.
[77] *See Guaranteed Rate*, 2022 WL 4088596, at *8 ("*Even if GRI and HUD had a contractual relationship*, the CID was not based on a breach of contract cause of action.") (emphasis added).

The Insurers next argue that an application of the Breach of Contract Exclusion to the *Qui Tam* Action against the Pangea Plaintiffs would not void coverage, as it would have in *Guaranteed Rate*.[78] The Insurers explain the Breach of Contract Exclusion in the Great American Policy contains limitations on its application which were absent in *Guaranteed Rate*.[79] The Court disagrees.

The Breach of Contract Exclusion applies to the Side C coverage of the Policies, which provides coverage to the Pangea Plaintiff entities. [80] The Insurers seek a broad application of the Breach of Contract Exclusion to cases in which a breach of contract cause of action is not brought against the Pangea Plaintiffs. Such an interpretation would "effectively [extend] coverage of the exclusion to just about anything remotely connected"[81] to an allegedly breached contract, even where the non-breaching party does not bring the underlying claim, and where the underlying action is not one for breach of contract. While the Court acknowledges the use of broad language in the Breach of Contract Exclusion, Delaware law mandates that insurance policy exclusion clauses are to be "construed narrowly."[82]

---

[78] Insurers Opening at 29.

[79] Insurers Opening at 29-30.

[80] Sec. Am. Compl. Ex. B at End. 12.

[81] *ACE Am. Ins. Co. v. Guaranteed Rate, Inc.*, 305 A.3d 339, 348 (Del. 2023).

[82] *Guaranteed Rate*, 2022 WL 4088596, at *7 (quoting *Ferrellgas*, 2020 WL 363677, at *13).
    The Supreme Court of Delaware agrees that a broad application of policy exclusions which contain the phrase "arising out of" is unacceptable when the application would render coverage meaningless. *See Guaranteed Rate*, 305 A.3d at 348-349 (rejecting the application of a professional services exclusion where "ACE's interpretation of 'arising out of' effectively extends

The *Qui Tam* Action is not one for breach of contract.[83]  The *Qui Tam* Complaint alleges violations of federal law.[84]  The Insurers ask this Court to employ an overbroad application of the Breach of Contract Exclusion.  To do so would risk voiding Side C coverage under the Policies.  Arriving at the same conclusion as in *Guaranteed Rate*, the Court refuses to apply the Breach of Contract Exclusion in the manner requested by the Insurers.

## CONCLUSION

For the reasons explained above, the Insurers' Motion for a Judgment on the Pleadings is **DENIED**, and the Pangea Plaintiffs' Motion for a Judgment on the Pleadings is **GRANTED**.

**IT IS SO ORDERED.**

/s/ Meghan A. Adams

**Meghan A. Adams, Judge**

---

coverage of the exclusion to just about anything remotely connected to the professional service…In other words, a linkage must be meaningful, not tangential.").
[83] Sec. Am. Compl. Ex. A.
[84] *Id.* ¶ 86-97.